Robert A. MANN, Individually and as Trustee under the Will of D. P. Mann, Deceased, Appellant,

v.

W. H. RISINGER, Appellee.

No. 6941.

Court of Civil Appeals of Texas.

Beaumont.

Jan. 11, 1968.

Rehearing Denied Jan. 31, 1968.

Wheat, Wheat & Stafford, Woodville, for appellant.

Clark Anderson, Lufkin, for appellee.

PARKER, Justice.

W. H. Risinger sued Robert A. Mann, individually and as Trustee under the Will of D. P. Mann, deceased, for recovery of profits from an alleged joint adventure involving real property, alternatively suing on a written contract which had expired by its original terms, alleged to have been orally modified and extended, and/or in trespass to try title, and/or a suit to enforce a trust in land. Upon a jury verdict, plaintiff recovered $5,700.00 from defendant. Defendant moved for judgment non obstante veredicto. This motion was refused. The parties will be designated as in the trial court. We reverse the judgment of the trial court and render judgment that plaintiff take nothing.

In answer to Special Issue No. 1, the jury found that on August 7, 1962, plaintiff and defendant mutually agreed to become joint adventurers as to two tracts of land. Defendant contends there was no evidence to support the finding of the jury as to one of the elements of a joint adventure, namely, the obligation to share losses. This contention is sustained for the reasons hereinafter set forth. This is not a suit to reform a contract dated August 7, 1962, or to reform a deed dated August 8, 1962. Plaintiff and defendant entered into the following written agreement:

August 7, 1962

EXHIBIT "A"

TO WHOM IT MAY CONCERN:

VOL 227 PAGE 123

This will confirm an agreement between the undersigned, W. H. Risinger and Robert A. Mann, Trustee under the Will of D. P. Mann, deceased, whereby it is agreed that Robert A. Mann, Trustee shall advance the sum of $23,499.95 in exchange for a General Warranty Deed from W. H. Risinger on 147.7 acres of land in the Robert Conn Survey, Abstract No. 171 of Tyler County, Texas. It is understood and agreed that the timber on this property shall be marketed within the next twelve months period and then the property disposed of within a two year period from this date hereof. After the sale of timber and the property is made, the proceeds thereof shall be applied first towards the repayment to Robert A. Mann, Trustee of $23,499.95. After this sum is recovered then any additional amount which shall be recovered will be divided equally between W. H. Risinger and Robert A. Mann, Trustee of the D. P. Mann Trust, after any additional extra expenses have been paid. No interest shall accrue on the sum advanced before division of profits.

ACCEPTED AND AGREED

(Signed)    W. H. Risinger
        W. H. Risinger

(Signed)    Robert A. Mann
        Robert A. Mann, Trustee

FILED:

March 9, 1967
8:25 A.M.

■ There is no evidence of a prior fiduciary relationship between the above parties. The plaintiff did not agree to share losses under this agreement and testified he never was to pay any expense. The trial court instructed the jury that one of the indispensable elements of a joint adventure is: "Each party must have an obligation to share losses." This issue was submitted in accordance with the rule announced in Kaiser Gypsum Company v. Jordon (Ct.Civ.App.1966) 399 S.W.2d 588 (writ ref., n. r. e.). On page 591 of such opinion the court said:

Among the requisites of a joint venture are (a) the right to participate in the profits, (b) the obligation to share losses, (c) joint control of the enterprise. Brown v. Cole, 155 Tex. 624, 291 S.W.2d 704, 709, 59 A.L.R.2d 1011; Luling Oil & Gas Co. v. Humble Oil & Refining Co., 144 Tex. 475, 191 S.W.2d 716, 722.

See also W. H. Hodges & Co. of Alexandria, Inc. v. Donley County State Bank, 407 S.W.2d 221 (Sup.Ct.1966).

Defendant contends there was no evidence of probative force to support the answer of the jury to Special Issue No. 2, finding that when plaintiff conveyed the lands to Robert A. Mann, Trustee, on August 8, 1962, the grantor and grantee mutually agreed that grantee would hold the land for the benefit of plaintiff and defendant. The deed itself considered with the agreement of August 7, 1962 is the only agreement between plaintiff and defendant on August 8, 1962.

Plaintiff asserts that defendant was in effect a constructive trustee relying on Omohundro v. Matthews, 161 Tex. 367, 341 S.W.2d 401 (1960). In the Omohundro case, the plaintiff and defendant had had previous dealings with each other as partners and the transaction made the basis of the suit was the last of several transactions between the parties. In the instant case, there was no prior fiduciary relationship between defendant and plaintiff.

■ In the case of Consolidated Gas and Equipment Company v. Thompson, 405 S.W.2d 333 (Sup.Ct.1966) (one of the cases cited being the Omohundro case), the court said:

Our holdings above cited are to the effect that for a constructive trust to arise there must be a fiduciary relationship before, and apart from, the agreement made the basis of the suit. Such is our holding here. As stated, the fact that one businessman trusts another, and relies upon his promise to carry out a contract, does not create a constructive trust. To hold otherwise would render the Statute of Frauds meaningless.

Again, the agreement between the parties of August 7, 1962, together with the deed of August 8, 1962, from plaintiff to defendant precludes the idea of a constructive trust in favor of plaintiff. These two instruments plainly state that Mann is trustee under the Will of D. P. Mann, deceased. This excludes the idea that he was trustee for the plaintiff, Risinger.

■ Defendant contends there was no evidence to support the jury finding in answer to Special Issue No. 3 that the contract dated August 7, 1962 did not expire two years from its date. As a matter of law, the contract of August 7, 1962 expired and became of no further effect two years subsequent to August 7, 1962 unless validly extended. There was no valid extension.

The jury found in answering Special Issue No. 4, that prior to August 7, 1964, plaintiff and defendant mutually agreed to extend the time during which the original agreement of August 7, 1962 could be performed. There was no written modification. The jury answered "Yes," to Special Issue No. 5 "that the contract or memorandum dated August 7, 1962 was modified or changed in any particular other than the extension of the time for performance." Defendant contends there is no evidence of probative force to show a mutual agreement to extend the term of the contract and that

its motion for judgment non obstante veredicto should have been granted in view of the jury's finding that the time for performance of the contract had been orally extended for an indefinite time, and other terms of the contract also had been modified. Defendant's contentions are sustained.

■■■ In considering all "no evidence" points, only the evidence favorable to the jury's findings are considered. The plaintiff testified:

Q. (By Mr. Anderson) Mr. Risinger, you heard Mr. Mann testify he was under the impression all rights expired at the end of two years as far as he was concerned?

A. No, sir.

MR. WHEAT: Did you sustain the objection?

THE COURT: No, sir, the instrument speaks for itself.

MR. WHEAT: That was my same impression. I don't know of any proper evidence to be submitted to the jury when the instrument speaks for itself.

Q. (By Mr. Anderson) Was that your understanding?

A. Yes, sir.

THE COURT: The objection is overruled.

Q. (By Mr. Anderson) I'm not so sure what I asked you, Mr. Risinger, was it your understanding that the contract would just die at the end of the two year period or not?

A. It would not die at the end of the two year period.

MR. WHEAT: That's my same objection.

THE COURT: The objection is sustained about it dying.

Q. (By Mr. Anderson) I will rephrase it to this extent. Mr. Risinger, was it your understanding that you would have a continuing right to try to sell the land?

A. Yes, sir.

MR. WHEAT: Just a minute. The Court just ruled the contract speaks for itself.

THE COURT: The objection is sustained.

MR. WHEAT: I ask the Jury be instructed to disregard the question and answer.

THE COURT: Ladies and Gentlemen, you will disregard the last question and answer about what the witness thought.

Q. (By Mr. Anderson) Mr. Risinger, when you went back to Mr. Mann about two or three months before the end of the two year period the memorandum details, what did he say to you and what did you say to him?

MR. WHEAT: I believe I will repeat my objection that I made earlier and I assume I have a running objection to this line of testimony?

THE COURT: You may answer, sir. The objection is overruled.

A. We talked about the land and I told him I didn't think we were going to get the price that we had been asking for it and we talked about lowering the price, and I thought I could sell it in a reasonable length of time. It would be naturally more profitable for us both if we would hold it a little longer. He told me, "You will have to pay interest then." "You will have to pay the Mann Estate interest." I said, "How much"? He said, "Eight per cent."

Q. Were you told that or did you agree to it?

A. Well, *I didn't say anything* because he controlled it. I had to say, "You're the man with the money." (Emphasis ours)

Q. So that was the statement from him rather than an agreement on your part?

A. *Yes, sir.* (Emphasis ours)

Q. Did you and Mr. Mann have any agreement as to how long you would be allowed to sell this land in the future?

A. No.

Q. Did you ever have any agreement other than the written memorandum that anything would happen to the land if you didn't sell it within two years?

A. No, sir.

Plaintiff's attorney states in his brief:

Mr. Mann flatly denies that there was any agreement to extend the terms or to modify the contract. Of course, to modify or extend the terms of the contract would require the mutual consent of both parties.

After quoting plaintiff Risinger's testimony above, plaintiff in his brief states:

This is the only evidence in this record that would indicate any type of alteration or change in the agreement. The reading of this testimony will indicate that it was Mr. Mann who was demanding eight per cent and that Mr. Risinger did not ever agree to this alteration.

The other side of this "mutual agreement" is Mann's demand being refused, Mann agreed to nothing. All this amounted to was a conference with no agreement to extend, change or modify the August 7, 1962 written agreement. It is too nebulous and uncertain to conclude there was a mutual agreement.

■ Defendant urges that if the oral agreement extended the time of performance of the original contract of August 7, 1962 indefinitely and modified it otherwise, as found by the jury, such oral agreement was in violation of The Real Estate License Act, Section 28 of Article 6573a. In Dracopoulas v. Rachal, 411 S.W.2d 719 (Sup.Ct.1967) a similar case to this case

was being considered. In the instant case, if there was an extension of time for an indefinite period, then another provision was changed. The August 7, 1962 agreement did not obligate plaintiff to pay interest on the money paid by defendant for the purchase price of the lands plus all expenses. The alleged extension agreement did. As in the Dracopoulas case, we regard this as an oral agreement violating the requirement that "the promise or agreement upon which action shall be brought * * * must be in writing and signed by the party to be charged therewith. * * *" The party to be charged with interest was plaintiff.

The court sustained defendant's exception to the pleadings of plaintiff attempting to vary the terms of the written instruments. Defendant, by answer, specially denied entering into any agreement with plaintiff to extend the term of the written contract of August 7, 1962, had a general denial and pled the two and four year statutes of limitation, the provisions of Article 3995(4, 5), Article 1288 and the provisions of Article 6573a and 7425b–7, Vernon's Ann.Civ.St., in bar of plaintiff's asserted cause of action. During the trial, the court sustained defendant's objections to the attempts of plaintiff to vary the terms of the written instruments. However, the plaintiff was allowed to testify that he had an interest in the land that did not cease after the two-year period, or ten-year period or any period. The deed from the Herringtons to Risinger excepted and retained an undivided $\frac{1}{8}$ of all the oil, gas and other minerals, in, on and that may be produced from the lands. This deed was promptly filed of record on August 7, 1962. The deed from Risinger to defendant of August 8, 1962, was a straight warranty deed conveying the lands without any mineral reservations. The title to these lands seem to have been questioned by attorneys for prospective purchasers prior to and during the two-year term. Mr. J. A. Mooney, an attorney and abstractor, examined the title to these lands in 1962 at the instance

of Mr. Roark. He advised Mr. Roark that the Herringtons did not have clear title to the land and that he would not write a title policy on the lands. Roark requested him to clear the title and Mooney refused. The chief defect was missing heirs whose title had not been acquired. This was before Mr. Risinger obtained the money from Mr. Mann to pay for the deed from the Herringtons. In 1963, the defendant paid $1,100.00, plus one-half the court costs to settle a law suit involving the title to the 60-acre tract, the plaintiffs being J. D. Herrington, et al. It was agreed by Risinger that Mann would not sell the timber within one year because they considered the timber as more valuable in selling the lands with the timber standing than the total of the market price of the timber if cut plus the market price of the land with no timber. Never, at any time during the two-year period, was any purchaser found willing to pay a price yielding a profit. No timber was sold during the two-year period. Beginning in December, 1964, through February 9, 1965, Mann sold timber suitable for posts to International Paper Company that would not destroy the market value of the land. The total amount of money from posts was $238.15. During the two-year period, an oil, gas and mineral lease bonus yielded $1,963.50. This bonus was on a basis of $15.00 an acre, which means that Humble considered that lessor did not have title to 13.09 acres. Rentals of $3.00 an acre were paid.

■■■ This property was not owned by plaintiff, Risinger. It was owned by defendant. Defendant acquired the title by the general warranty deed from plaintiff. "Property in a thing consists not merely in its ownership and possession, but in the unrestricted right of use, enjoyment and disposal." Spann v. City of Dallas, 111 Tex. 350, 235 S.W. 513, 514, 19 A.L.R. 1387 (1921). The written agreement of August 7, 1962 and the deed from W. H. Risinger to Robert A. Mann, Trustee, dated August 7, 1962 are to be construed together. The complete control of the sale of the property was vested in defendant. Throughout his testimony, the plaintiff, Risinger, admitted that it was up to the defendant to fix the price for the sale of the lands. During the two-year period, plaintiff, Risinger, could not require defendant to sell the land or any part thereof, nor could he interfere with defendant's sale of the land for any price or under any condition, nor could he demand any profits from a sale that had not been made by defendant.

Plaintiff Risinger testified that he and Mr. Mann, in the early part of the two-year period, agreed that the 60-acre tract should bring $300.00 an acre and the 87.7-acre tract should bring $325.00 an acre. No purchasers for either of these tracts were found at those prices or at any other price until 1966, according to the evidence.

Plaintiff, W. H. Risinger, on March 15, 1966, as "Owner" signed a listing contract —exclusive authority to sell—with a licensed real estate broker, T. E. Phillips, to sell 87.7 acres, Robt. Conn Survey, for $237.50 an acre. There is no description of the 87.7 acres and no mention of mineral reservations. The broker was to have a 5% commission. Phillips testified he found a buyer for not more than 78 acres in the person of Birdwell. Where the 78 acres were located, we know not. Birdwell did not sign as buyer. Birdwell said he offered to buy 87.7-acre tract at that price, the offer being to plaintiff. Later, he talked to Mann and made no offer, although Mann wanted to sell it.

■■■ The only other prospective purchaser was a Mr. Parks. Plaintiff Risinger did not tell Mr. Mann about Mr. Parks' offer. This latter offer developed June 14, 1966. Parks testified he never offered Mr. Mann anything for the 60-acre tract. The only man Mr Parks talked to was Mr. Risinger. Plaintiff Risinger testified that when he advised Mr. Mann of Birdwell's offer in May of '66, Mr. Mann told him, let me talk to the estate about it and I'll let you know at 1 o'clock. At 1 o'clock, defendant advised him that his time

was out and he had no interest in the land. Risinger expected to get one-half of the profit out of the sale of these two tracts of land. Defendant told him he didn't have any claim on it and that he wasn't going to pay Mr. Phillips any commission and then pay plaintiff half the profit. There is no writing containing within itself all the essential particulars of a concluded contract for the sale of land. No deed was prepared. No contract of sale was signed either by the owner or by a purchaser. No tender of money for the purchase price was ever made to Mr. Mann. As said in American Nat. Ins. Co. v. Warnock, 131 Tex. 457, 114 S.W.2d 1161, 1164 (S.Ct.1938):

> To form a binding contract, it must appear that the party to whom the offer is made accepts such offer and communicates such acceptance to the person making the offer;

and in Little v. Perry, 410 S.W.2d 286, 290 (C.C.A.1966 n. r. e.):

> Also, to constitute a valid tender the thing to be tendered must be actually produced and offered to the party entitled thereto. Cornelius v. Cook, Tex.Civ.App., 213 S.W.2d 767; Johnson Mfg. Co. v. Edwards, Tex.Civ.App. 344 S.W. 2d 506.

Risinger testified that after defendant was reimbursed for the purchase price and all expenses his share of the profits would include one-half of any money left over plus one-half of any minerals not sold, even though the sale of the property was accomplished 10 years from date. Such contention is at variance with the written contract of August 7th, providing that "any additional amount which shall be recovered will be divided equally between W. H. Risinger and Robert A. Mann, Trustee of the D. P. Mann Trust" does not mean land. Such modification involving the sale of real estate would have to be in writing and not violate Section 4, Article 3995 or Article 6573a. Not being in writing, same is void.

Judgment of the trial court for damages is here reversed and judgment rendered that W. H. Risinger take nothing as to the title to and possession of the lands involved in this suit as against Robert A. Mann, individually and as Trustee under the Will of D. P. Mann, deceased, and that W. H. Risinger take nothing in the way of damages against Mann in such capacities.